UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
                :

**ELLA SHARON,** on behalf of herself and all others  :
similarly situated,

                :

          Plaintiff,      :  **MEMORANDUM**

                :  **DECISION AND ORDER**

      **- against -**      :  17-CV-5174 (AMD) (CLP)

                :

**CAC FINANCIAL CORP.,**

                :

         Defendant.    :
------------------------------------------------------------- X

**ANN M. DONNELLY,** United States District Judge:

On September 1, 2017, the plaintiff filed this putative class action in connection with a

series of collection letters the defendant sent her in 2016. She claims that the defendant violated

the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et. seq.*, because the letters

did not tell her if the defendant was assessing interest or fees on the account. On November 30,

2018, the defendant moved for summary judgment. (ECF No. 17.)[1] For the reasons that follow,

the defendant's motion is granted in its entirety.

## BACKGROUND

In 2016, the plaintiff owed approximately two thousand dollars on a credit card account

with Synchrony Bank. (ECF No. 17, Ex. A ("Def. 56.1") ¶ 3; ECF No. 20 ("Pl. 56.1") ¶ 5.) In

April of 2016, Synchrony placed the account in collection and transferred the account to EGS

Financial Care, a collection agency. (Def. 56.1 ¶ 1; Pl. 56.1 ¶¶ 1-2.) EGS sent the plaintiff a

letter on April 20, 2016 in an effort to collect an outstanding balance of $1,751.00. (Pl. 56.1 ¶ 4-

---

[1] Both parties filed pre-motion conference letters; in keeping with my individual rules, the defense also
filed a 56.1 statement, to which the plaintiff did not respond. At the pre-motion conference, I invited the
parties to submit supplemental letters instead of formal briefing.

5.)  The parties agree that on August 16, 2016, Synchrony "charged-off" the plaintiff's account, and transferred her account to the defendant, another collection agency.  (Def. 56.1 ¶ 1; Pl. 56.1 ¶ 1-2; ECF No. 22 at 2-3.)[2]  On September 2, 2016, the defendant sent its first letter to the plaintiff trying to collect the outstanding balance of $2,018.79.  (ECF No. 22-1 at 8-9.)  The letter said that the plaintiff's "POST C/O INTEREST" and "POST C/O FEES" were zero, and listed a "POST C/O AMOUNT" of $2,018.79.  (*Id.* at 8.)[3]  The defendant sent a second letter to the plaintiff on October 16, 2016, listing the same balance due.  (ECF No. 22-1 at 10-11.)

According to the plaintiff, the defendant's letters were misleading because it was not clear whether the balance was still accruing interest; she believed it might be because the amount listed as due in EGS's letter was lower than the amount specified in the defendant's letters.  As a result, she says she did not know if she would satisfy the debt by paying the balance stated in the defendant's letters.  The defendant says that it did not include an amount for interest or fees in the letters because the plaintiff's account was charged-off, and charged-off accounts do not accrue interest or fees.  Thus, the defendant contends, the plaintiff's debt was static throughout the period the defendant tried to collect the debt, and the defendant's letters accurately reflect that the amount did not change or accrue interest or fees.

On September 1, 2017, the plaintiff brought this action on behalf of herself and "all other similarly situated consumers," alleging one violation of the FDCPA.  (ECF Nos. 1, 14.)[4]  The defendant moved for summary judgment, and the plaintiff opposes.

---

[2] An original creditor "charges off" a debt by characterizing the debt as a loss due to the likelihood that the debtor will never pay it off.  *See* Charge off, Black's Law Dictionary (11th ed. 2019).

[3] Although neither party addresses or explains this language, "POST C/O" seems to be an abbreviation for "post charge-off."

[4] The plaintiff amended her complaint on October 10, 2018.  (ECF No. 14.)

**STANDARD OF REVIEW**

Summary judgment is appropriate only if the parties' submissions show that there is "no genuine dispute as to any material fact," and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant has the burden of showing the absence of any genuine dispute as to a material fact. *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997) (citation omitted). A fact is "material" when it "might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Barlow v. Male Geneva Police Officer Who Arrested Me on Jan. 2005*, 434 F. App'x 22, 25 (2d Cir. 2011) (citations omitted). Once the moving party has met its burden, the opposing party must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

**DISCUSSION**

"Congress enacted the FDCPA to protect against the abusive debt collection practices likely to disrupt a debtor's life," *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 81 (2d Cir. 2018) (quotations and citation omitted), and prohibit the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §§ 1692, 1692e. "In the Second Circuit, 'the question of whether a communication complies with the FDCPA is determined from the perspective of the 'least sophisticated consumer.'" *Kolbasyuk v. Capital Mgmt. Servs., LP*, 918 F.3d 236, 239 (2d Cir. 2019) (quoting *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 90 (2d Cir. 2008)). This standard requires "an

objective analysis that seeks to protect the naive from abusive practices, while simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations of debt collection letters." *Greco v. Trauner, Cohen & Thomas, LLP*, 412 F.3d 360, 363 (2d Cir. 2005) (citations and quotations omitted). "[I]n crafting a norm that protects the naïve . . . the courts have carefully preserved the concept of reasonableness," and may assume that "even the least sophisticated consumer . . . possess[es] a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.* (quoting *Clomon v. Jackson*, 988 F.2d 1314, 1318-19 (2d Cir. 1993)). Thus, the defendant's communication is viewed "from the perspective of a debtor who is uninformed, naive, or trusting, but is making basic, reasonable and logical deductions and inferences." *Dewees v. Legal Servicing, LLC*, 506 F. Supp. 2d 128, 132 (E.D.N.Y. 2007) (internal citation omitted). While the least sophisticated consumer is not as savvy as the "average, everyday consumer," she is "neither irrational nor a dolt." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (citation omitted).

The plaintiff accuses the defendant of violating Sections 1692e, 1692e(2)(A) and 1692e(10) of the FDCPA because the defendant's letters did not specify whether her debt was still accruing fees or interest, or whether paying the balance due would erase her debt. Under Section 1692e(2), a debt collector violates the FDCPA if it makes a false representation of either the "character, amount, or legal status of any debt," or "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." 15 U.S.C. § 1692e(2). Section 1692e(10) prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(10).[5] However, the Second Circuit has held that "a collection

---

[5] A "collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate." *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cr. 1996). "When a

notice that fails to disclose that interest and fees are not currently accruing on a debt is not misleading within the meaning of Section 1692e." *Taylor v. Fin. Recovery Servs., Inc.*, 886 F.3d 212, 214-15 (2d Cir. 2018). Put differently, "failing to disclose that a debt is static is not misleading within the meaning of Section 1692e." *Id.* at 215.

*Taylor* resolves this case decisively against the plaintiff. The parties agree that Synchrony charged-off the plaintiff's account on August 16, 2016, and that the defendant sent its first collection notice to the plaintiff two weeks later. Even if the plaintiff's account might have been collecting interest before Synchrony charged-off the account, or when another collection agency was trying to collect the debt, the debt stopped collecting interest and fees on August 16, 2016. At that time, the balance due was $2,018.79—the amount the defendant listed in its September and October collection letters. That amount did not change while the defendant attempted to collect the debt, and the defendant's letters accurately stated the balance, interest and fees the plaintiff owed. While "being informed that [her] debts were not accruing interest or fees could have been advantageous to [the plaintiff], as it would have alerted [her] to the fact that [she] could delay repayment without their debts increasing. . . . [t]his supposed harm falls short of the obvious danger facing consumers in *Avila*." *Taylor*, 886 F.3d at 214-15 (citing *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 77 (2d Cir. 2016)). There is nothing misleading or deceptive about the defendant's letters.

The plaintiff's efforts to analogize this case to *Avila* and to distinguish it from *Taylor* are not persuasive. As the Second Circuit in *Taylor* observed in distinguishing the two decisions, the *Avila* collection notice was misleading because Avila's debt was still accruing interest. In that

---

statement is susceptible [to] only one reasonable interpretation, the court should determine whether that interpretation is false in violation of section 1692e(10), ignoring any unreasonable interpretations." *Ghulyani v. Stephens & Michaels Assocs., Inc.*, No. 15-CV-5191, 2015 WL 6503849, at *2 (S.D.N.Y. Oct. 26, 2015).

situation, the least sophisticated consumer might believe that "'she could pay her debt in full by paying the amount listed on the notice,' . . . whereas, in reality, such a payment would not settle the debt." *Taylor*, 886 F.3d at 214 (quoting *Avila,* 817 F.3d at 76).  It is undisputed in this case that while the plaintiff's debt might have been accumulating interest before the defendant acquired it, Synchrony charged-off the debt on August 16, 2016, and then transferred the account to the defendant for collection.  The evidence, including the defendant's affidavits and the content of the letters it sent to the plaintiff, demonstrate that the outstanding debt was static during the period the defendant was trying to collect on the debt.   Thus, all the plaintiff had to do was pay $2,018.79 to settle the debt.  Nothing in the record supports the plaintiff's assertions to the contrary.

## CONCLUSION

Accordingly, for the reasons set forth above, the defendant's motion for summary judgment is granted.  The Clerk of Court is respectfully directed to enter judgment in favor of the defendant and close the case.


**SO ORDERED.**

s/Ann M. Donnelly
—————————————————
ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
      September 28, 2020